**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Lynn Tomczak,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of the Social Security Administration,<br><br>Defendant. | No. CV-22-00108-DGC<br><br>**ORDER** |

Plaintiff Patricia Tomczak seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration, which denied Plaintiff's application for disability insurance benefits. For reasons stated below, the Court will affirm the decision of the Administrative Law Judge ("ALJ").

**I.  Background.**

Plaintiff is a 61-year-old woman who previously worked as a certified nursing assistant and call center representative. Tr. 42, 61-64, 346. Given her work history and earnings record, Plaintiff was last insured for disability benefits on September 30, 2020. Tr. 25.

In January 2016, Plaintiff applied for social security benefits, alleging a disability date of July 27, 2015. Tr. 288-89. Plaintiff alleges that she suffered from depression, bipolar disorder, cognitive disorder impairment, memory deficiency, anxiety, and insomnia. Tr. 345.

After a hearing, the ALJ denied Plaintiff's claim on March 11, 2019. Tr. 121-38. On June 19, 2020, the Appeals Council remanded for further proceedings and a new hearing. Tr. 139-42.

Plaintiff and a vocational expert testified at a new hearing on January 25, 2021. Tr. 24, 61-79. On March 26, 2021, the ALJ issued a written decision denying the claim. Tr. 21-50. This became the Commissioner's final decision when the Appeals Council denied review on November 18, 2021. Tr. 1-6. Plaintiff commenced this action for judicial review on January 20, 2022. Doc. 1. The parties briefed the issues after receipt of the certified administrative transcript. Docs. 11, 12, 16, 17.

## II.     Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the whole record. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (cleaned up). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). And "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.     The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A claimant must show that (1) she has not engaged in substantial gainful activity since the alleged disability date, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity (RFC) – the most work she can do with her impairments – precludes her from performing past work. §§ 416.920(a)(4)(i)-(iv); *id.* If a claimant meets her burden at step three, she is presumed disabled and entitled to benefits. § 404.1520(a)(4)(iii). If a claimant meets her burden at step four, then (5) the Commissioner must show that the claimant is able to perform other available work given her RFC, age, education, and past work experience. § 404.1520(a)(4)(v); *see Tackett*, 180 F.3d at 1099.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 27, 2015 through September 30, 2020, when she last met the insured status requirements of the Social Security Act. Tr. 27. At step two, the ALJ found that Plaintiff had the following severe impairments: mild cognitive impairment, bipolar disorder, mood disorder, depression, anxiety, arthritis, and hypothyroidism. Tr. 28. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 28-31. At step four, the ALJ found that Plaintiff had the RFC to perform a range of unskilled medium work and light work but with non-exertional limitations. Tr. 32-42.[1] The ALJ found that Plaintiff was unable to perform any past relevant work.

---

[1] Medium work is defined by 20 C.F.R. § 404.1567(c) and "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." The ALJ noted that "it follows that a range of unskilled light work would also fall within the bounds of work the claimant is able to perform." Tr. 43. Light work is defined by 20 C.F.R. § 404.1567(b) and "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Light work may require a substantial amount of walking or standing or sitting with pushing and pulling of

Tr. 42.  At step five, the ALJ determined, based on testimony from the vocational expert and Plaintiff's RFC, age, education, and work experience, that she could work as a warehouse worker, laundry worker, hand packager, marker, mail clerk, or office helper. Tr. 43-44.  The ALJ found that these jobs existed in significant numbers in the national economy and Plaintiff was not disabled within the meaning of the Social Security Act from July 27, 2015 to September 30, 2020.  Tr. 44.

**IV.    Discussion.**

Plaintiff argues that the ALJ erred by improperly weighing the medical opinion evidence and discrediting Plaintiff's symptom testimony, and that her conditions match Listing 12.02.  Doc. 12 at 1, 18-20.  She asks the Court to remand her case or an award of benefits.

**A.    Medical Opinion Evidence.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work."    20 C.F.R. § 404.1527(d)(1).   But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions.  § 404.1527(a)(1), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

---

arm or leg controls.  § 404.1567(b).

- 4 -

When a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, as in this case, it can be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation marks and citation omitted).

Under both standards, "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation marks and citation omitted).[2]

### 1. Dr. DeJesus.

Dr. Mildred DeJesus is a neurologist who treated Plaintiff at Gilbert Neurology from approximately December 2016 through April 2018. *See* Tr. 598-615, 1364-1388. She opined that Plaintiff had "[m]ild cognitive impairment," Tr. 611, and "cognitive decline" most likely attributable to "dementia of Alzheimer's type," Tr. 595. She found that these conditions impaired Plaintiff's ability to "learn new information" and "deal with personnel, computers, financial responsibilities, or driving." Tr. 611.

---

[2] The rules for evaluating opinion evidence changed effective March 27, 2017. For claims filed after that date, ALJs no longer apply the "treating physician rule" or give specific evidentiary weight to any medical opinion. *See* 20 C.F.R. §§ 404.1520(c), 416.927(c). The new rules do not apply in this case because Plaintiff filed her claim on January 19, 2016. *See* Doc. 12 at 1.

The ALJ characterized Dr. DeJesus as opining that Plaintiff's impairments "prevent her from performing any type of work." Tr. 42. In part on this basis, the ALJ gave Dr. DeJesus' opinion minimal weight. Tr. 42. But Dr. DeJesus did not opine that Plaintiff was unable to perform any type of work; she found that Plaintiff functioned with various limitations. The ALJ's incorrect characterization of Dr. DeJesus' opinion was error.

Even though the ALJ committed error, that error will be harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina v. Astrue*, 674 F.3d 1104, 1115; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Because the ALJ adopted an RFC that was largely consistent with the limitations identified by Dr. DeJesus, the Court concludes that the ALJ would have reached the same conclusion without this error and that the error therefore is harmless.

The ALJ also explained that "various treatment notes of record reflect that the claimant's memory was stable, that her mood has improved, and that she maintains fairly active daily activities." Tr. 42. As described in more detail below, the ALJ's opinion cited many examples from the record that support this conclusion. Although those citations were not set forth in the specific paragraph discussing Dr. DeJesus, they are clear from the ALJ's opinion and the Court should sustain a decision if the course of reasoning is clear. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

**2. Dr. Rawson.**

Dr. Jaime Rawson is a treating physician who provided a medical source statement regarding Plaintiff's ability to work. *See* Tr. 625. Dr. Rawson opined that Plaintiff's "cognitive impairments prevent her from doing any substantial gainful work." *Id.* This conclusion was based on Plaintiff's diagnosis of early onset dementia and "difficulties learning new information." *Id.* Dr. Rawson noted that Plaintiff's impairments "are anticipated to be lifelong with gradual worsening." *Id.*

The ALJ gave little weight to Dr. Rawson's opinion for several reasons:

> Dr. Rawson's opinion is not well supported by her treatment notes, which indicate based on neuropsychiatric testing that the claimant's cognitive function appeared relatively stable, but that there were concerns about

untreated anxiety and depression (6F/24). Additionally, the claimant reported she feels as if her memory loss is getting worse overall, although her husband reported that he . . . feels her memory is relatively stable (6F/24). Furthermore, on December 2, 2016, the claimant stated that she continues with short-term memory loss: but, had found that volunteering had helped because she is on a routine and this helps her to be more organized. (5F 1, 6F/2). Lastly, a review of the record indicates the claimant does household chores, shops, goes to the gym, cares for her pets, attends doctor's appointments, attends church, irons, clean[s] the yard, maintains [her] own personal hygiene, preps meals, goes out daily, [is] able to go out alone, travels via walking/driving a car or riding a bicycle. (4E) . . . . "[T]he undersigned . . . affords this opinion little/limited weight as Dr. Rawson's assessment concludes that the claimant is unable to engage in substantial gainful activity. . . . Furthermore, the undersigned notes that this opinion lacks consistency with other objective findings made [throughout] the record that reflect some improvement in mental health issue and stability in memory loss, and a relatively high level of daily functioning as noted above. Therefore, this opinion little weight in the finding of disability.

Tr. 40-41.

The Court cannot conclude that the ALJ erred. She cited several specific reasons for discounting Dr. Rawson's opinion, including medical findings that Plaintiff was relatively stable, her husband's opinion that her memory was stable, Plaintiff's statement that her volunteering routine helped her be more organized, and her significant daily activities. *See* Tr. 40. She found that this evidence did not agree with Dr. Rawson's opinion that Plaintiff could not engage in "any substantial gainful work." Tr. 625. And the ALJ noted other objective findings set forth in other parts of her opinion which are described below.

"Incongruity between a treating physician's opinions and her own medical records is a 'specific and legitimate reason' for rejecting the opinions." *Dennis L. v. Comm'r of Soc. Sec. Admin.*, No. C20-5170-MLP, 2020 WL 6343321, at *3 (W.D. Wash. Oct. 29, 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). The ALJ sufficiently contrasted specific portions of the medical record with Dr. Rawson's findings of a total inability to work. These were specific and legitimate reasons.

/ / /

### 3. Dr. Daniel Gross and Dr. Margaret Pollack.

Plaintiff argues that instead of relying on the consistent opinions of treating physicians, the ALJ assigned significant weight to the opinions of non-examining doctors. Doc. 12 at 20 (citing Tr. 40). Plaintiff contends that the ALJ "erred by failing to provide sufficient reasons supported by substantial evidence to rely on the state agency nonexamining" physicians. Doc. 17 at 8; *see also* Doc. 12 at 20. But the ALJ reasoned that the opinions of the non-examining physicians "are consistent with the persuasive objective evidence and the claimant's activities of daily living." Tr. 40. Plaintiff does not address these reasons or show why they are incorrect. *See* Doc. 12 at 19-20. The Court accordingly finds no error.

### 4. Listing 12.02.

The ALJ found that Plaintiff's "mental impairments, considered singly and in combination, did not meet or medically equal criteria of listings 12.02, 12.04, and 12.06." Tr. 29. Plaintiff contends that her disorder meets the specified medical criteria for Listing 12.02 when the opinions of Dr. DeJesus and Dr. Rawson are assigned appropriate weight. *Id.* at 20.

To determine whether a claimant meets a listing, an ALJ must discuss and evaluate the evidence in support of her conclusion. *Lewis*, 236 F.3d at 513. The ALJ analyzed the medical record and discounted the opinions of Dr. DeJesus and Dr. Rawson. As discussed above, the ALJ's decision was supported by substantial evidence and was not based on legal error. The ALJ therefore did not err in finding that Plaintiff's impairments did not meet Listing 12.02. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013).

## B. Plaintiff's Symptom Testimony.

An ALJ must engage in a two-step analysis when evaluating a claimant's symptom testimony. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Garrison*, 759 F.3d at 1014. The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has

alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* [3]

Plaintiff testified about her symptoms at two administrative hearings. On February 28, 2019, Plaintiff testified that she was unable to work due to memory and concentration problems. Tr. 84-88. She testified she cannot drive without getting lost, retain what she reads beyond two minutes, or grocery shop without forgetting the layout of the store. Tr. 84-86. Plaintiff testified that her husband prepares her medications. Tr. 85. She testified that she has trouble sleeping, does not take naps, watches television, and has no difficulty maintaining personal hygiene. Tr. 87-88.

At a second hearing on January 25, 2021, Plaintiff again testified to concentration and memory impairments. Tr. 65-67. She testified that she has problems reading, writing, keeping track of time, and remembering things for longer than 20 minutes. Tr. 66, 73. She has difficulty cooking, cleaning, and grocery shopping and receives help from her husband. Tr. 71. She volunteers at Salvation Army as a greeter and package handler for six hours a week. *Id.* She traveled out of state on her honeymoon and for several short trips. Tr. 72. But she does not travel alone because she gets lost and does not feel comfortable in new places. Tr. 73. She attends church. Tr. 74. She frequently naps to avoid feeling overwhelmed or confused. *Id.*

The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Tr. 33. The ALJ also found, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of the[] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* The ALJ did not completely reject Plaintiff's testimony

---

[3] Defendant contests the clear-and-convincing-reasons standard, arguing that "the Ninth Circuit's 'clear and convincing' reasons standard conflicts with the substantial evidence standard in 42 U.S.C. § 405(g). But the Ninth Circuit has held that this position "lacks any support in precedent and must be rejected." *Garrison*, 759 F.3d at 1015 n.18.

about the severity of her symptoms, but instead found that the Plaintiff's symptoms did not render her unable to engage in unskilled medium work. *Id.*

The ALJ provided a detailed review of Plaintiff's medical records over seven single-spaced pages. Tr. 33-39. The ALJ noted that some medical records support Plaintiff's cognitive impairments. These include consistent complaints of memory loss, difficulty managing medication, finances, cooking, and shopping, and getting lost while driving. Tr. 34-35. Medical records also reflect an EEG that revealed mild slowing and a neuropsychological exam that suggested executive defunction. Tr. 35.

The ALJ also noted, however, that some medical records show a higher level of functioning than Plaintiff's testimony suggested. This evidence includes mental status exams in 2015 that were normal (Tr. 33), in 2017 that showed intact memory (Tr. 34), and in 2018 that revealed no abnormalities (Tr. 34). The ALJ cited neurocognitive testing in 2018 that showed Plaintiff's cognitive function was relatively stable (Tr. 35) and a 2020 MRI of Plaintiff's brain that was unremarkable (Tr. 35). The ALJ cited additional records showing that Plaintiff did volunteer work at Save the Family and used a computer, statements by Plaintiff that routine helped her to stay more organized, and Plaintiff's husband's view that she was safe while driving. Tr. 34. The ALJ further noted that Plaintiff consistently belonged to a women's bible study group before the COVID-19 pandemic and swims six times per week. Tr. 36-37.

After this detailed recounting of the medical records, the ALJ reached this conclusion:

> Overall, the longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms. While there are some positive findings on exam relative to the claimant's concentration, attention, and overall cognition, the rest result show [sic] early onset dementia, which could also be exacerbated by medication as well as undertreated anxiety, depression, PTSD. . . . While she reports multiple physical and mental difficulties related to dizziness, light-headedness, anxiousness, and forgetfulness, she has engaged in a variety of daily activities despite these problems. She reports swimming on a regular basis after complaining of dizziness and fatigue, she also reports

> volunteering and that the routine schedule helps keep her organized, despite indicating that her memory, and mental health issues have precluded her from any type of work activity. She shops in stores, tends to personal care, performs house chores, yard work, occasionally drives, and attends bible study. This level of activity is not consist[ent] with someone alleging such severe and debilitating mental and physical symptomatology. The totality of the evidence demonstrates that the claimant's alleged symptoms are not entirely consistent with the evidence of record.
>
> While the claimant has severe impairments, the residual functional capacity above accommodates the claimant's severe impairments by limiting her to the medium exertional capacity. The undersigned has also limited her to unskilled work involving only simple routine tasks, simple work related decision[s], and simple instructions with few changes in the work setting to accommodate her mental health and cognitive symptomatology. The result is that there are still a significant number of jobs available in the national economy that the claimant could sustain on a full time basis within the generous parameters of the above stated functional capacity.

Tr. 39. The ALJ also noted that Plaintiff reported, in a Function Report dated April 10, 2016, that she watched television, cooked meals, and engaged in online shopping. Tr. 30-31; Tr. 1177-1185.

Because the ALJ found no evidence of malingering, she could discount Plaintiff's testimony only by making "specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see* 20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – general findings are insufficient." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted); *see Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (finding insufficient the ALJ's "boilerplate statement" that the claimant's symptom testimony was "not entirely consistent with the objective medical evidence").

The Court finds that the ALJ met this standard. She carefully reviewed Plaintiff's lengthy medical history and found that her symptom testimony did not entirely comport with many indications in the medical records concerning mild cognitive impairments and a fairly active lifestyle. The ALJ found that Plaintiff's established cognitive limitations

were consistent with the RFC. Although reasonable minds could reach different conclusions from Plaintiff's lengthy and detailed medical history, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

An ALJ may reject symptom testimony if it contradicts other testimony or there is evidence that the plaintiff spends a substantial part of the day engaged in pursuits involving the performance of physical functions transferrable to a work setting. *Orn*, 495 F.3d at 639. An ALJ must make "specific findings" related to the daily activities and their transferability to a work setting. *Id.* (quoting *Burch*, 400 F.3d at 681). The ALJ specifically found that Plaintiff's actual limitations and activity level were reflected in the RFC, which "limited her to unskilled work involving only simple routine tasks, simple work related decision[s], and simple instructions with few changes in the work setting to accommodate her mental health and cognitive symptomatology." Tr. 39. Even at this level, the ALJ found, "there are still a significant number of jobs available in the national economy that the claimant could sustain on a full time basis within the generous parameters of the above stated functional capacity." *Id.* The Court finds that the ALJ sufficiently connected Plaintiff's conditions and activities to the work capabilities found in the ALJ's report. *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (the ALJ properly recognized that daily activities "did not suggest Valentine could return to his old job[,]" but "did suggest that [his] later claims about the severity of his limitations were exaggerated").

**IT IS ORDERED:**

1. The final decision of the Commissioner of Social Security to deny Plaintiff disability insurance benefits is **affirmed.**

2. The Clerk shall enter judgment accordingly.

Dated this 7th day of March, 2023.

*David G. Campbell*

David G. Campbell
Senior United States District Judge